IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN DAVID SCHAEFFER, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | No. 21-cv-3081 |
| Acting Commissioner of Social | : | |
| Security. | | |

## <u>MEMORANDUM OPINION</u>

**CRAIG M. STRAW**                                                           **November 30, 2023**
**United States Magistrate Judge**

        Stephen David Schaeffer seeks review of the Commissioner's decision denying his

application for Disability Insurance Benefits (DIB) and Supplemental Social Security (SSI)

benefits.  The parties consented to proceed before a Magistrate Judge[2] and the matter was

assigned to me.[3]  For the following reasons, I deny Schaeffer's request for review and affirm the

Commissioner's decision.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, she should be substituted for Andrew Saul as Defendant in
this suit.  <u>See also</u> 42 U.S.C. § 405(g) (stating "[a]ny action instituted in accordance with this
subsection shall survive notwithstanding any change in the person occupying the office of the
Commissioner of Social Security or any vacancy in such office.")
[2] <u>See</u> Docs. 9 & 20; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[3] I was reassigned the case from Magistrate Judge David R. Strawbridge on July 27, 2023.  Doc.
18.

I.      **PROCEDURAL HISTORY**

On August 11, 2016, Schaeffer filed an application for DIB and SSI benefits under the

Social Security Act.  R. 121; 132; 332-46.  In his application, Schaeffer asserted his disabling

condition began around February 11, 2016.[4]  R. 49; 59; 122; 132; 332; 339.

The claims were denied initially on December 13, 2016.  R. 167; 172.  Schaeffer filed a

request for a hearing.  R. 177.  A video hearing took place on May 24, 2018 before an ALJ

presiding from the National Hearing Center in Baltimore, Maryland.  R. 69; 146.  Schaeffer

appeared in Reading, Pennsylvania.  R. 71; 146.  The ALJ informed Schaeffer of his right to

counsel at the hearing, but Schaeffer elected to proceed pro se.  R. 78; 146.  The ALJ denied

benefits.  R. 143; 146-57; 162.

Schaeffer filed a request for review, alleging the ALJ decision was not based on

substantial evidence because Schaeffer was unrepresented, and the medical record was not

complete when the ALJ decided the case.  R. 162; 223.  Schaeffer also filed an appointment of

representation form, along with a fee agreement between Schaeffer and his attorney.  R. 217-20.

The Appeals Council granted the request for review, vacated the ALJ decision, and remanded the

case to resolve several issues.  R. 162-64.

---

[4] The ALJ's decision provides that Schaeffer's alleged onset disability (AOD) date is March 1,
2017.  R. 12; 15; 33.  During the hearing, however, the ALJ said to Schaeffer's attorney, Barbara
Feudale, "All right, Ms. Feudale, with regards to the onset date, it looks like we have a[n] onset
of February of '16.  That's -- is that the date that we're working from?"  Ms. Feudale responded
"Yes, ma'am."  R. 49.  Several documents in the record also support an AOD of February 11,
2016.  See R. 49; 59; 122; 132; 213; 332; 339.  Therefore, for the purpose of evaluating
Schaeffer's disability claims, I consider the medical evidence in the record beginning on
February 11, 2016.

First, the Appeals Council directed the ALJ to obtain additional medical evidence from Schaeffer's primary mental health treatment sources and consider the limitations proposed by Dr. Amanda Kochan-Dewey, Psy.D., because the ALJ afforded her opinion substantial weight.  R. 162.  The Appeals Council also ordered the ALJ to obtain more evidence regarding Schaeffer's impairments to complete the administrative record.  R. 163.  Furthermore, the ALJ was to evaluate Schaeffer's mental impairments according to the special technique set forth in 20 C.F.R. § 404.1520a and 416.920a and make specific findings for each functional area.  Id.  The ALJ also had to determine Schaeffer's limitations and residual functional capacity (RFC), evaluate the treating and non-treating source opinions, and decide what weight to give each opinion.  Id.  Finally, if necessary, the ALJ was directed to obtain supplemental evidence from the VE to clarify the effect of the assessed limitations on Schaeffer's occupational base as well as identify jobs in the national economy that Schaeffer could perform.  Id.

A second hearing was held on October 14, 2020 before a different ALJ, Margaret M. Gabell.  R. 44.  Because of the COVID-19 Pandemic, all the parties, including VE Daniel Rappucci and counsel for Schaeffer, participated by telephone.  Id.  The ALJ denied benefits on October 27, 2022.  R. 9-34.  Schaeffer filed a request for review of the ALJ's decision and a hearing, which were denied.  R. 1; 5; 7; 330.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.  Schaeffer's counsel then filed this action in federal court.  Doc. 2.  Schaeffer, through counsel, filed Plaintiff's Brief and Statement of Issues in Support of Request for Review.  Doc. 10.  Defendant filed a Response to Plaintiff's Request for Review.  Doc. 17.  No reply brief was filed.

II.   **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.   Whether the claimant is currently engaged in substantial gainful activity;

2.   If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.   If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," see 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.   If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the RFC to perform their past work; and

5.   If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies based on their age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc.

4

Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)).  It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck, 181 F.3d at 431).

## III.   ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Schaeffer met the insured status requirements of the SSA through December 31, 2021.  R. 15.  Schaeffer had an excellent work history through 2015, but significantly diminished earnings in 2016 and reported no income after that.  R. 15; 390-91.  The ALJ further found that Schaeffer has not engaged in any substantial gainful employment since his disability onset date.  R. 12; 15; 33.

The ALJ noted that Schaeffer had several severe impairments including bipolar disorder, posttraumatic stress disorder (PTSD), lymphedema, obesity,[5] and generalized anxiety disorder. R. 15; 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ considered and decided that Schaeffer's

---

[5] While no specific Listing exists for obesity, the ALJ found that Schaeffer was obese.  R. 15. The ALJ mentioned obesity may have an adverse impact on co-existing impairments and limit a claimant's ability to work eight hours a day, five-days a week or an equivalent schedule.  Id. The ALJ considered this when deciding disability.  Id.

mental impairments did not satisfy the "paragraph B" criteria[6] because he did not have at least two "marked" limitations or one "extreme" limitation.  R. 16.

First, the ALJ found no limitation in understanding, remembering, or applying information.  Id.  The ALJ found that Schaeffer had moderate limitations interacting with others, and concentrating, persisting, or maintaining pace.  Id.  Finally, the ALJ found that Schaeffer had no limitation adapting or managing himself.  Id.  Hence, the paragraph B criteria were not met. Id. at 17.

The ALJ also found that the evidence failed to establish the presence of the "paragraph C" criteria.[7]  R. 17.  The ALJ determined the severity of Schaeffer's mental impairments, either singly or in combination, did not meet or medically equal any of the Listings.  R. 15; 20 C.F.R. pt. 404 subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

Considering the entire record, the ALJ found Schaeffer had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), however, she limited Schaeffer to no climbing ladders, ropes, or scaffolds, but occasionally climbing ramps and stairs.  R. 17.

_____

[6] The four "paragraph B" criteria rate a claimant's functional limitations.  See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(A)(2)(b).  To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in the four areas of mental functioning.  Id. § 12.00(F)(2).  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id. § 12.00(F)(2)(e).  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id. § 12.00(F)(2)(d).

[7] See 20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00(G)(2)(b)-(c).  The ALJ noted that Schaeffer had no medically documented history of chronic depression, bipolar or anxiety-related disorder accompanied by one extreme limitation or two marked limitations.  R. 17.  In addition, the ALJ found no evidence of any marginal adjustment.  Id.

Schaeffer was also limited to no exposure to unprotected heights and no use of foot controls.  Id.
Schaeffer could perform unskilled, simple, routine tasks and simple decision making, could
tolerate only occasional changes in the workplace, and occasional interaction with co-workers
and supervisors, but no direct contact with the public.  Id.

Regarding his mental impairments, the ALJ stated

> the evidence showed that the claimant stopped working due to
> being terminated because of harassment issue with a coworker, not
> because of mental or physical impairments.  As a result of these
> charges he spent 22 days in jail and his wife obtained a PFA
> against him and filed for divorce.  He began mental health
> treatment as a condition of his probation.  As detailed above, the
> mental health treatment notes showed that the claimant's
> symptoms responded well to medication and that his mental status
> examinations frequently showed that he was disheveled, but did
> not indicate any other acute problems.  Both the therapist and case
> manager notes showed that the[y] encouraged the claimant to
> consider looking for work or volunteer opportunities but that the
> claimant refused and that he was worried that if he went to work he
> would jeopardize his chances to get benefits.  Giving the claimant
> all benefit of the doubt, the undersigned allowed for a restriction to
> simple, unskilled work, few changes, and limited interactions, but
> these restrictions do not preclude all work.

R. 32.

While Schaeffer had relevant past work, he was unable to perform any of it.  R. 32; 20
C.F.R. §§ 404.1565(a), 416.965.  Relying on the testimony of the VE, the ALJ determined based
on Schaeffer's age, education, work experience, and RFC, a significant number of jobs existed in
the national economy he could perform including unskilled light assembler/production,
inspector, and masker of electrical components.  R. 33; 64-65.  Therefore, the ALJ found that
Schaeffer was not disabled.  R. 33.

In his request for review, Schaeffer argues the ALJ erred when she found, at step three, that Schaeffer's mental impairment or combination of impairments did not meet or medically equal the criteria for any of the Listings.  Doc. 10, at 3-10.  Schaeffer also claims the ALJ failed to properly consider the treating and examining source opinions in the record, namely Dr. Mark A. Putnam, M.D., and did not provide an adequate rationale when rejecting his opinion.  Id. at 3; 10-11.  The Commissioner counters that substantial evidence supports the ALJ's findings at step three.  Doc. 17, at 6-11.  Moreover, the Commissioner asserts the ALJ properly evaluated the opinion evidence and substantial evidence supports the finding that Schaeffer is not disabled.  Id. at 11-15.

## IV.   FACTUAL BACKGROUND

### A.  Non-medical evidence

Schaeffer was born in 1969 and is therefore an individual "closely approaching advanced age."  R. 45; 117; 20 C.F.R. §§ 404.1563(d), 416.963(d).  Schaeffer graduated from high school and completed one or two years of college.  R. 16; 32; 397; 486; 689.  He worked as a paramedic and paramedical supervisor between 1990 and 2016.  R. 16; 63-64; 397; 413-14; 416-20; 518.

Schaeffer stopped working in 2016 after an incident at work.  R. 18; 59.  Schaeffer had developed an emotional relationship with a co-worker.  R. 18; 21; 49-50; 58.  The co-worker then decided she did not want to speak to Schaeffer outside of work.  R. 18; 50-51.  Schaeffer responded by sending three or four emails to the woman in one week.  R. 18; 50.  As a result, the woman complained to her employer and filed harassment and stalking charges against Schaeffer. R. 18; 50-51; 825; 827.  The employer ultimately terminated Schaeffer because of the charges.

R. 18; 51.  Schaeffer was subsequently sentenced to 21 or 22 days in prison and a few years of probation.  R. 18; 54; 634; 835.  As part of probation, Schaeffer was required to attend mental health counseling.  R. 20; 55.

Schaeffer testified his "mental health history" began over twenty years ago after he had to carry several dead children from a house fire as part of his work as a paramedic and resulted in survivor's guilt.  R. 57; 643; 690; 716.  Schaeffer said his PTSD and panic attacks arose again after his co-worker pressed charges and he "started on a . . . quick downward slope."  R. 18; 57.  Schaeffer claims he suffers from bipolar depression, anxiety, anger issues, and fatigue.  R. 18; 57-58.  Schaeffer also has lymphedema in his left leg.  R. 19; 63.

After his incident with the co-worker, Schaeffer's wife served him with divorce papers.  R. 18; 52.  She also filed a Protection From Abuse (PFA) order against him based on his conduct, including verbal abuse.  R. 18; 20; 52-53; 642-43.  Schaeffer previously lived with his wife and three daughters for several years.  R. 18; 52.  At the time of the hearing, Schaeffer was living with his parents in their basement, and spent some time at his sister's home.  R. 52-53; 799.  Schaeffer's living situation has caused him stress.  R. 16; 689; 726; 729; 731; 799; 935.

When he lived with his wife and kids, Schaeffer assisted with chores and helped care for his older children.  R. 18-19; 406; 422.  More recently, Schaeffer watches television, spends time on the internet, has prepared simple meals, helps with laundry and household chores, manages his own money, can drive a car on his own, shops for groceries, takes care of himself, and attends church.  R. 18-19; 406-09; 423; 425; 692.

**B.  Medical evidence**[8]

Schaeffer began mental health treatment during his short incarceration in February and March 2016.  R. 20; 563.  Marisa Friedman, Psy.D., reported that, despite a history of depression and a suicide attempt 20 years ago, Schaeffer showed a calm mood, congruent affect, logical thoughts, and no evidence of hallucinations or suicidal ideations.  R. 20; 570; 575-79; 587; 594; 620-22.  Schaeffer expressed that he wanted to get his job back, start therapy, and patch up his marriage.  R. 20; 605; 622.  Schaeffer was diagnosed with depressive disorder and treated with Depakote and Celexa.  R. 20; 607; 619-21.

After Schaeffer was released from prison, he saw Dr. Ambrose B. Peterman, D.O.  R. 634-35.  Schaeffer asked Dr. Peterman if he could renew Schaeffer's medication until he could see a psychiatrist.  Id.  At a follow-up visit, Schaeffer reported "feeling well" while taking Depakote and Celexa.  R. 20; 636.  Dr. Peterman encouraged him to continue the medication and attend an appointment with a psychiatrist.  R. 20; 637.

In April 2016, Dr. Peter Stern, LPC, met with Schaeffer.  R. 20-21; 644.  Schaeffer described a "night and day difference" taking Depakote.  Id.  Schaeffer had reported struggling since his early 20s with mood regulation, insomnia, mass overthinking, poor concentration, and racing thoughts.  R. 644-45.  During the examination, Schaeffer's behavior was normal, mood was euthymic, his affect was mood-congruent, and his thought process and content were normal.  R. 646-47.  He was diagnosed with episodic mood disorder.  R. 21; 647.  Schaeffer continued

---

[8] Here, I outline only the pertinent medical evidence related to the issues on appeal, which includes the evidence Schaeffer relies on in his brief, along with some information about Schaeffer's psychiatric and therapy treatment for background.

treating with Depakote and Celexa.  R. 21; 649.  At a subsequent appointment, Schaeffer's mood was stable, he tolerated the medication well, and reported wanting to get back to work.  R. 21; 650.  He reported feeling ready to work and mentioned that his wife made him apply for disability because he had been unable to find work.  R. 21; 649-50.

Schaeffer attended an initial psychiatric evaluation with Dr. Cynthia Thomasset, M.A., at Berkshire Psychiatric Associates (Berkshire) on May 7, 2018 because he wanted a new therapist, and probation required that he attend therapy.  R. 22; 835.  Schaeffer discussed with Dr. Thomasset his past as an EMT, the "emotional affair" and resulting stalking charges, and his difficulties at home.  R. 22; 835-36.  Schaeffer was anxious, had a sad affect, and was emotional during the evaluation.  R. 22; 840.  Schaeffer's depression was medically managed, and the other findings were unremarkable.  R. 22; 840-41.  Several weeks later, Schaeffer underwent a psychiatric evaluation at Berkshire.  R. 22; 744-48.  Schaeffer again reported having survivor's guilt.  R. 22; 745.  Schaeffer was calm and cooperative, was assessed as having average intelligence, but his mood was listed as depressed and anxious, with flat affect.  R. 22; 747.  Schaeffer was diagnosed with unspecified anxiety disorder, major depressive disorder, and acute PTSD.  R. 22; 748.

Dr. Thomasset referred Schaeffer to Treatment Access and Services Center, Inc. (TASC) for individual therapy and medication management.  R. 22; 715.  Schaeffer met with case manager David Frey at which time Schaeffer detailed his PTSD, history of depression, home situation, and lack of employment.  R. 23; 715-16.  Schaeffer also mentioned that he was denied benefits and had appealed the ruling.  R. 23; 716.  The notes show Schaeffer's affect and

demeanor varied with some crying and tearfulness as he discussed his past and current family situation.  Id.  Schaeffer began taking Klonopin with minimal side effects, continued Depakote, stopped taking Celexa, and started Lexapro.  R. 23; 749.  Mr. Frey continued to see Schaeffer over the next few months.  R. 716-18; 721-22; 723-30.  They discussed Schaeffer securing his own housing since Schaeffer's wife wanted him to move out of the house.  R. 23; 716; 718; 721; 723-27.

Dr. Kochan-Dewey, a Social Security psychological consultative examinator, examined Schaeffer on January 31, 2019.  R. 25; 688.  After Schaeffer recounted his longitudinal history, Dr. Kochan-Dewey conducted a mental examination.  R. 25; 689-91.  During the exam, Schaeffer was cooperative with appropriate eye contact and was fairly-groomed.  R. 22; 691. Even though Schaeffer's hair was messy and he was unshaven, his nails were clean and trimmed. Id.  He had a neutral mood and restrictive affect.  Id.  Schaeffer's concentration and attention were intact, and he could perform simple counting, simple calculations, and serial 7s.  Id.  His memory was also intact, and he recalled three out of three objects immediately, and three out of three after a delay.  Id.  Schaeffer could perform five digits forward and four digits backwards. Id.  His cognitive functioning was average.  Id.  Dr. Kochan-Dewey's diagnoses included unspecified bipolar and related disorder, substance use (alcohol, in remission), and unspecified personality disorder.  R. 26; 692.  She recommended Schaeffer continue with psychological and psychiatric treatment.  R. 692.  A medical source statement Dr. Kochan-Dewey completed indicated Schaeffer's mental impairments had no effect on his ability to understand, remember, and carry out instructions, and a moderate effect on his ability to interact appropriately with

supervisors, co-workers, and the public, and respond to work changes in a routine work setting, because of his "mood/ability."  R. 694-95.  In addition, Dr. Kochan-Dewey reported Schaeffer's mental impairments had no effect on his ability to concentrate, persist, or maintain pace or the ability to adapt or manage oneself.  R. 695.

In March 2019, Schaeffer met with Dr. Putnam of Berkshire for a psychiatric evaluation. R. 26; 813-14.  Schaeffer reported his current medications help and he did not want to change them.  R. 26; 813.  During the exam, Schaeffer was cooperative, mood was normal, his speech was clear and appropriate, he reported his sleep as normal, and his thought processes were intact. R. 26; 813.  Schaeffer was in no acute distress.  Id.  Dr. Putnam diagnosed Schaeffer with PTSD and bipolar disorder and prescribed Depakote, Lexapro, and Clonazepam.  R. 26; 814.  Dr. Putnam completed a one-page physician's information request in August 2019 and identified Schaeffer's diagnoses as anxiety disorder, bipolar II disorder, and PTSD and opined that Schaeffer had been continuously disabled from 2015 until the present.  R. 30; 759.

Schaeffer continued to see Dr. Thomassett and meet with case managers, including Mr. Frey in 2018, and regularly throughout 2019[9] to 2020.  R. 26-30; 789-948.

Schaeffer felt stable during this time, but the medication made him tired.  R. 23; 727; 731; 753-54; 813; 846; 931.  Schaeffer mentioned at several appointments that he was waiting on a disability decision and was "basing his whole future" on the money from the decision.  R. 23-24; 26-29; 849; 851-52; 855; 859; 869.  Schaeffer was focused on getting his disability benefits

_____

[9] In late 2019, Schaeffer began to see a different case worker, Kate Lewis, from TASC.  R. 28; 795-810; 878.

first and mentioned that he would "jeopardize this by working." R. 28; 792. Dr. Thomassett attempted to manage Schaeffer's expectations about the likelihood of a benefit award. R. 851; 855. She also tried to encourage Schaeffer to think of ways to support himself, engage in other meaningful activities, or even volunteer. R. 25; 845; 849; 856-57; 860; 862; 872. Schaeffer expressed frustration with his living arrangements and lack of resources. R. 26; 851-52; 858; 871; 873; 877; 935; 945.

At these appointments Schaeffer was often disheveled in appearance, sometimes had a blunted affect and a depressed or anxious mood. R. 25-26; 846; 849; 853-57. Schaeffer felt depressed when his claim for disability benefits was denied and was annoyed the appeal process was not moving quickly enough. R. 26; 863; 865; 867. Despite Dr. Thomassett's urging that outpatient therapy twice a month was not sufficient, Schaeffer refused to attend more intensive therapy. R. 865; 880; 897; 904; 923. Dr. Thomassett also encouraged Schaeffer to walk or do something beneficial for this physical and mental health, but Schaeffer never did. R. 846; 856; 867; 869; 871; 880; 906; 912; 916; 923; 935; 938; 945. Instead, Schaeffer seemed completely preoccupied with winning his disability case. R. 28; 849; 851; 855; 857; 859; 862; 869; 879; 884; 916.

## V.    DISCUSSION

### A.  The ALJ did not err when she determined Schaeffer was not presumptively disabled because his impairments failed to meet or equal the criteria for any of the Listings at step three.

To prove a disability, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which

lasts or can be expected to continuously last for a period of no less than 12 months.  42 U.S.C. §
423(d)(1)(A).  At step three, a plaintiff may be deemed "presumptively" or "conclusively"
disabled if he or she meets the criteria of one of the Listings set forth in 20 C.F.R. pt. 404, subpt.
P., app. 1.  See 20 C.F.R. §§ 404.1520(d), 416.920(d).  The Listings are "descriptions of various
physical and mental illnesses and abnormalities, most of which are categorized by the body
system they affect."  Sullivan v. Zebley, 493 U.S. 521, 529 (1990).  To qualify for a listed
impairment, a claimant must "present medical findings equal in severity to *all* the criteria for the
one most similar listed impairment."  Id. at 531 (emphasis in original); 20 C.F.R. §§ 404.1526(a),
416.926(a).  "An impairment that manifests only some of th[e] criteria, no matter how severely,
does not qualify."  Zebly, 493 U.S. at 530 (citations omitted).

The medical criteria defining listed impairments is set at a higher level than the statutory
standard for disability because if a Listing is met it operates as a presumption of disability and
makes further inquiry regarding whether a claimant can perform prior or other work unnecessary.
Id. at 532.  The claimant has the burden of proof at step three.  Buma v. Colvin, No. 1-16-cv-
01568, 2017 WL 2821695, at *5 (M.D. Pa. May 22, 2017), approved and adopted, June 29, 2017
(citing Zebly, 493 U.S. at 532).  If presumptive disability is not established at step three, the
disability analysis proceeds to step four.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An ALJ is not required to use particular language or a certain format when considering a
specific Listing and analyzing the claimant's impairments.  See Jones, 364 F.3d at 505 (citing
Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir. 2000)).  The record, however, must

be sufficiently developed and the ALJ must adequately discuss the findings to permit meaningful review.  Burnett, 220 F.3d at 120.

Schaeffer claims the ALJ erred in this case because his mental conditions, based on the medical evidence in the record, meet or medically equal Listing § 12.04 for depressive, bipolar, and related disorders.  Doc. 10, at 3; 6-10.[10]  Listing 12.04 is satisfied if a claimant meets sections A and B, or A and C.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  To meet the Listing set forth in § 12.04, a claimant must show:

A. Medical documentation of the requirements of paragraph 1 or 2:

1. Depressive disorder, characterized by five or more of the following:

a. Depressed mood;
b. Diminished interest in almost all activities;
c. Appetite disturbance with change in weight;
d. Sleep disturbance;
e. Observable psychomotor agitation or retardation;
f. Decreased energy;
g. Feelings of guilt or worthlessness;
h. Difficulty concentrating or thinking; or
i. Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the following:

a. Pressured speech;
b. Flight of ideas;
c. Inflated self-esteem;
d. Decreased need for sleep;
e. Distractibility;

---

[10] The ALJ also found that Schaeffer did "not have a medically diagnosed impairment of sufficient severity to meet or medically equal" the criteria for Listings 12.06 (anxiety disorder) and 12.15 (trauma- and stressor-related disorders).  R. 15.  Schaeffer does not argue in his opening brief that his mental impairments meet or are the medical equivalent of Listings 12.06 or 12.15.  See Doc. 10, 6-10.  Therefore, those arguments are deemed waived and are not addressed here.  See Lucas v. Barnhart, 184 F. App'x 204, 206 n.1 (3d Cir. 2006).

f. Involvement in activities that have a high probability of painful consequences that are not recognized; or

g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

OR

C. [The claimant's] mental disorder in this listing category is "serious and persistent;" that is, [claimant has] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [claimant's] mental disorder; and

2. Marginal adjustment, that is, [claimant has] minimal capacity to adapt to changes in [his or her] environment or to demands that are not already part of [claimant's] daily life.

See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (internal citations omitted).

Schaeffer relies mainly on Dr. Peterman and Dr. Stern's records to support his claim that he has depressive disorder.  Doc. 10, at 6-7.  I find that the medical documentation in the record establishes that Schaeffer has five or more characteristics of depressive disorder under section

A.[11]  Therefore, I must consider whether Schaeffer can establish the criteria for sections B or C

to meet the Listing.

Schaeffer has not demonstrated he has an extreme limitation of one or two marked

limitations in the areas of mental functioning set forth in section B.  In other words, Schaeffer

has not established that he meets the paragraph B criteria.  See 20 C.F.R. pt. 404, subpt. P, app.

1, § 12.04.

When addressing this issue, the ALJ found:

> To satisfy the "paragraph B" criteria, the mental impairments must
> result in one extreme limitation or two marked limitations in a
> broad area of functioning.  An extreme limitation is the inability to
> function independently, appropriately, or effectively, and on a
> sustained basis.  A marked limitation is a seriously limited ability
> to function independently, appropriately, or effectively, and on a
> sustained basis.
>
> In understanding, remembering or applying information, the
> claimant has no limitation.  The claimant graduated from high
> school, completed one year of college, and obtained vocational
> training in pre and post hospital care.  He was certified as a
> paramedic and performed the duties of that job for more than many
> years.  In the Function Report, the claimant stated that he had no
> problem with written instructions, but that he might need to have
> spoken instructions repeated.  Dr. Kochan-Dewey, the consultative
> examiner, assessed average intelligence.
>
> In interacting with others, the claimant has a moderate limitation.
> In the Function Report, the claimant stated that he preferred to stay

---

[11] Schaeffer points to some medical documentation in the record with characteristics of
depressive disorder, including depressed mood (R. 566; 643), at least one instance of sleep
disturbance (R. 644), feelings of worthlessness (R. 565; 582), difficulty concentrating or thinking
(R. 645), and thoughts of death or suicide (R. 576; 591-92; 602).  Schaeffer experienced many of
these during his brief period of incarceration.  Schaeffer does not argue in his brief that he can
establish three of more characteristics of bipolar disorder.  See 20 C.F.R. pt. 404, subpt. P, app.
1, § 12.04A(2).

to himself, but he also [said] that he attended church regularly and attended his children's sporting events.  Treatment records reflect that claimant was alternating residences between his parents' home and his sister's home and that he had stressful relationships with his family members.  Therapy notes showed that the claimant was charged with harassing and stalking a coworker after which his wife filed for divorce and obtained a restraining order against him.  Therapy notes showed that the claimant was generally cooperative, but lacked the motivation to make changes in his life.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.  The claimant alleged that he has difficultly sustaining concentration and focus.  In the Function Report, the claimant stated that he had problems managing money because of stress and that he could not pay attention "as long as before."  At the consultative examination, the claimant had intact concentration and attention and was able to count, perform simple calculations, and complete serial 7s.  His memory was also intact and he was able to recall 3/3 objects immediately and after a delay.  He recited 5 digits forward and 4 backwards.  Treatment notes routinely showed that the claimant enjoyed going to the library to read and use the internet and that he went to his sister's home to use the internet during the week, which suggests some capacity for concentration and focus.  His therapist and psychiatrists do not indicate any significant impairment in concentration and attention.

As for adapting and managing oneself, the claimant has experienced no limitation.  In the Function Report the claimant stated that he attended to his personal care, he prepared simple meals, he did household chores and laundry, he drove and went out alone, and he shopped in stores.  He used social media to communicate with others and frequently went to the library.  Ms. Schaeffer also indicated that the claimant was engaged in a broad range of daily activities.  Treatment notes showed that at times, the claimant appeared mildly disheveled, but during the consultative examination, he reported that he showered and dressed daily.  The claimant also told the consultative examiner[] that he could manage his own money, prepare simple meals, and go out alone.  He claimed that he did not cook or do household chores because his mother would not let him.  Treatment notes showed that he was focused on obtaining benefits so he could get his own residence and that he felt he was able to live independently.

> Because the claimant's mental impairments do not cause at least
> two "marked" limitations or one "extreme" limitation, the
> "paragraph B" criteria are not satisfied.

R. 16-17.

Schaeffer asserts that he has marked limitations in his ability to adapt or manage himself and to interact with others. Doc. 10, at 7-9. Specifically, Schaeffer argues he stopped working in 20186 because he "cracked," and a work incident occurred resulting in criminal charges and "ultimately divorce and homelessness." Id. at 8. Schaeffer also cites to several other documents including emergency room treatment notes, documents from case manager Mr. Frey, a SSA mental status exam, and other psychiatric treatment notes to show he is unable to adapt or manage himself or interact with others. Doc. 10, at 8-9.

The ALJ found that Schaeffer had no limitation adapting or managing himself. R. 16. This finding is supported by substantial evidence in the record. The ALJ determined and the record supports that Schaeffer can prepare simple meals, perform household chores, drive, go out alone, assist with his daughters, and grocery shop. R. 406-08; 422-25; 661. Moreover, Schaeffer uses social media, showers and dresses daily and frequently goes to the library. R. 406; 409; 422; 489; 692; 736; 741. Evidence in the record shows that one of the reasons Schaeffer was so focused on obtaining benefits was so he could get his own place and live independently. R. 729; 731; 733; 790; 800. Although Schaeffer appeared mildly disheveled at times during certain appointments, the record shows that Schaeffer engaged in numerous activities demonstrating he can adapt and manage himself. Therefore, the ALJ's finding that Schaeffer has no limitation adapting and managing himself is supported by substantial evidence.

Additionally, the ALJ's finding that Schaeffer had a moderate limitation[12] interacting with others is supported by substantial evidence in the record.  R. 16.  As the ALJ pointed out, Schaeffer's preference is to stay at home, but he also goes to church, shops in stores, and attends his children's various sporting events.  R. 408-10; 424-25; 439.  While Schaeffer generally presented at appointments as cooperative, his medical providers noted he was not motivated to make changes in his life.  R. 691; 792; 795; 813; 855; 857; 871; 875.  Moreover, Schaeffer had been charged with harassing and stalking a co-worker; as a result, his wife filed for divorce and a PFA order was entered against him.  R. 420; 487; 651; 690; 720.  Schaeffer also had strained and stressful relationships with his other family members, to some degree brought on by the fact that, after the divorce, he moved out of the house he shared with his family and lived with his elderly parents.  R. 689; 692; 730; 735-36; 740-41; 774.  Accounting for these considerations, the ALJ appropriately attributed a moderate limitation to Schaeffer in this area of functioning.[13]

Schaeffer fails to establish the criteria of section B because he has not demonstrated an extreme limitation in one or a marked limitation in two areas of mental functioning.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

---

[12] A moderate limitation is "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c).

[13] Schaeffer does not dispute the ALJ's findings that he has no limitation in understanding, remembering, and applying information and a moderate limitation in concentrating, persisting, or maintaining pace.  See Doc. 17, at 9.

As explained above, Schaeffer cannot meet sections A and B or A and C[14]—the criteria necessary for Listing 12.04.  The ALJ's decision finding that Schaeffer is not presumptively disabled is supported by substantial evidence.  Therefore, Schaeffer's first claim asserting step three errors lacks merit.

**B.  The ALJ properly considered the opinion of Dr. Putnam.**

Schaeffer spends only one page of his brief arguing that the ALJ did not properly consider the treating and examining source opinions in the record.  Doc. 10, at 10-11.  In support, Schaeffer states that psychiatrist, Dr. Putnam, indicated that "Plaintiff suffers from chronic PTSD and bipolar disorder requiring Depakote, Klonopin and Lexapro" and an anxiety disorder and severe depression.  Id. (internal citations omitted).  Nevertheless, Schaeffer does not explain in any detail how the ALJ erred when she evaluated Dr. Putnam's opinion evidence.  Id.

When discussing Dr. Putnam, the ALJ stated:

> As for the opinion evidence, Dr. Putnam of Berkshire completed a physician's information request on August 7, 2019 in which he identified [Schaeffer's] diagnoses as anxiety disorder, bipolar II disorder, and PTSD and opined that [Schaeffer] had been disabled between 2015 and the present.  Dr. Putnam's opinion is not persuasive because he did not address specific function-by-function limitations.  Furthermore, determinations of disability are reserved to the Commissioner.

R. 30.

---

[14] Finally, Schaeffer has not addressed, nor can he demonstrate that his mental disorder is "serious and persistent."  He also cannot show the medical treatment and marginal adjustment required to meet section C.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04; R. 17.

When a benefits application is filed before March 27, 2017, a treating source's medical opinion should be given substantial, and at times, even controlling weight.[15]   See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   An ALJ affords treating physicians' reports great weight because "their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"   Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)).   Medical sources that have a limited relationship with a claimant are not afforded that greater weight.   See e.g., Smith v. Comm'r Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007) (stating medical reports from doctor who examined claimant once and wrote physical capacity evaluation, and another who examined claimant, completed medical report, prescribed medication, and refused to fill refill did not deserve treating-source review because neither doctor had type of ongoing treatment relationship with claimant as contemplated by regulation).

An ALJ must consider the medical findings supporting a treating physician's opinion that claimant is disabled.   See Morales, 225 F.3d at 317-18 (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).   An ALJ may reject a treating physician's assessment or opinion if the ALJ does not make "speculative inferences from medical reports" or can reject them "outright only on the basis of contradictory medical evidence," but cannot reject it due to his or her own credibility judgments, speculation, or lay opinion.   Morales, 225 F.3d at 317-18 (quoting Plummer v. Apfel,

---

[15] Schaeffer's application for benefits was filed on August 11, 2016.   See R. 49; 121; 132; 332-346.   Therefore, the prior treating source rule applies.   Effective March 27, 2017, the SSA amended the rules addressing the evaluation of medical evidence, eliminating the assignment of weight to any medical opinion.   See Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

23

186 F.3d 422, 429 (3d Cir. 1991)) (additional citations omitted). When the record contains conflicting evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as he or she does not "reject evidence for no reason or for the wrong reason." Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429.

Schaeffer's first listed date of treatment with Dr. Putnam was May 7, 2018 and his most recent treatment date was August 9, 2019, which suggests Dr. Putnam treated Schaeffer over a long period of time.[16] R. 759. The records also indicate that Schaeffer saw Dr. Putnam every three months. R. 689-90. Dr. Putnam conducted a psychiatric evaluation of Schaeffer in March of 2019, completed a one-page information request from August 2019, and filled out medication progress notes from 2019 and 2020. R. 759; 813-16; 818-21. For purposes of my analysis here, I assume Dr. Putnam has observed Schaeffer over a prolonged period of time, is a treating physician, and his opinion may be afforded greater weight. See Morales, 225 F.3d at 317.

Despite the general rule that a treating source's opinion be given greater weight, when the ALJ weighed the medical sources in this case, she explained in sufficient detail why she chose not to adopt Dr. Putnam's opinion when crafting Schaeffer's RFC. See Rutherford, 399 F.3d at 554. The ALJ found Dr. Putnam's conclusory diagnosis and determination of disability dating back to 2015 not persuasive. Preliminarily, I point out that Putnam's determination that Schaeffer was disabled beginning in 2015 conflicts with Schaeffer's work history and earnings

---

[16] The physician information request Dr. Putnam completed provides that the length of treatment was twenty-nine therapy visits and six medication visits, although several of these visits may have been with Dr. Thomassett. R. 759. Meanwhile, Schaeffer's recent medical treatment form suggests his treating relationship with Dr. Putnam began in 2015. R. 520.

through 2015.  R. 15; 390-91.  Furthermore and importantly, Dr. Putnam's opinions failed to assess Schaeffer's specific function-by function limitations.  R. 30; 759.  The ALJ also discounted Dr. Putnam's finding that Schaeffer was disabled because she correctly noted that disability determinations are reserved for the Commissioner, not a medical provider.  See R. 30; 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).

The ALJ instead decided to credit the substantial medical findings that Schaeffer had greater mental functioning than Dr. Putnam opined, which was well-within her discretion to do. R. 15-17; 25-26; 30; 31-33; see also Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429. The ALJ found Dr. Kochan-Dewey's opinion partially persuasive.  R. 31. The ALJ explained that while the overall record, including the treatment evidence and testimony, supported that Schaeffer had moderate limitations in the ability to interact with others and concentrating, persisting, and maintaining pace, (see R. 408-10; 420; 424-25; 439; 487; 651; 689-92; 720; 730; 735-36; 740-41; 774; 792; 795; 813; 855-57; 871; 875 (interacting with others) and 424; 644-45; 689-91 (concentrating, persistence, and pace)), it did not support that Schaeffer had any other mental functional limitations affecting his ability to adapt/manage himself or understand, remember, and apply information.  See R. 63-64; 397; 406-09; 413-14; 416-20; 422-25; 426; 486; 489; 518; 661; 689; 692; 695; 729; 731; 736; 741; 747; 790; 800.  Thus, Schaeffer was not disabled.  For the RFC, the ALJ appropriately limited Schaeffer to light work (with certain limitations) and accounted for Schaeffer's mental impairments by restricting him to simple, routine tasks and simple decision making, with only occasional changes in the workplace,

25

occasional interaction with co-workers and supervisors, and no direct contact with the public.  R. 17.

The ALJ was permitted to adopt medical evidence contradicting Dr. Putnam's findings. See Morales, 225 F.3d at 317-18.  The record does not indicate the ALJ rejected Dr. Putnam's opinion based on her speculative inferences from the medical reports or her own credibility judgment or lay opinion.  See id.  This Court will not re-weigh the evidence when substantial evidence supports the ALJ's conclusion.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  For these reasons, Schaeffer's claim that the ALJ did not properly consider, or address, Dr. Putnam's opinion fails.

## VI.    CONCLUSION

The ALJ did not err when it found that Schaeffer's impairments did not meet or were not equal in severity to any of the listed impairments.  Moreover, the ALJ properly considered and evaluated Dr. Putnam's opinion evidence.

Accordingly, Schaeffer's request for review (Doc. 1) is **DENIED**.  An appropriate order accompanies this opinion.


BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge

26